AO 91 (Rev. 01/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Jason Delcol | ) | Case No. 2:18-mj-136 |
| | ) | |
| | ) | |
| *Defendant* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of ___04/01/2017___ in the county of ___Delaware___ in the ___Southern___ District of
___Ohio___, the defendant violated ___21 /18___ U. S. C. § ___841 / 846 / 333 /1512___, an offense described as follows:

1) 21 U.S.C. § 841—Possession with the Intent to Distribute and Distribution of Controlled Substances
2) 21 U.S.C. § 846—Conspiracy to Possess with the Intent to Distribute and to Distribute Controlled Substances
3) 21 U.S.C. § 333(e)—Possession with the Intent to Distribute and Distribution of Human Growth Hormone
4) 18 U.S.C. § 1512(b)(3)—Witness Tampering

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Tisha Hartsough, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___02/26/2018___

*Judge's signature*

City and state: ___Columbus, Ohio___

Elizabeth Preston Deavers, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF ARREST WARRANTS AND
## SEARCH AND SEIZURE WARRANTS

I, Tisha M. Hartsough, a Special Agent with the Federal Bureau of Investigation, hereinafter referred to as the Affiant, being duly sworn, depose as follows:

## INTRODUCTION

I have been employed by the Federal Bureau of Investigation for 16 years. I am assigned to the Columbus Resident Agency, Cincinnati Division, where I have investigated violations of many State and Federal laws, including crimes of violence, drug trafficking, public corruption and civil rights violations, as well as crimes related to terrorism.  Relative to this affidavit, I have been trained to investigate and have directed and participated in numerous drug trafficking and law enforcement corruption investigations. Based upon my training, experience and my review of the evidence gathered by investigators assigned to this investigation, there is probable cause to believe that the requested warrants will find information that constitutes evidence of the commission of and/or information intended for use or which is or has been used as a means to commit the criminal offenses listed below. There is also probable cause to believe the individuals listed below committed the crimes listed below.

## PURPOSE OF AFFIDAVIT

The facts and information contained herein are based on my personal knowledge and experience, that of other law enforcement personnel, surveillance operations, text and phone records, financial records, other documents and from persons with knowledge regarding the relevant facts and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

This affidavit is being submitted for the purpose of obtaining arrest warrants and will establish there is probable cause to believe the following individuals have committed the following crimes:

**Nicholas Glassburn, DOB 11-27-1970**

21 U.S.C. § 841—Possession with the Intent to Distribute and Distribution of Controlled Substances

21 U.S.C. § 846—Conspiracy to Possess with the Intent to Distribute and to Distribute Controlled Substances

18 U.S.C. § 1956(a)(1)(A)(i)—Money Laundering

**Jason Delcol, DOB 8-13-1974**

21 U.S.C. § 841—Possession with the Intent to Distribute and Distribution of Controlled Substances

21 U.S.C. § 846—Conspiracy to Possess with the Intent to Distribute and to Distribute Controlled Substances

21 U.S.C. § 333(e)—Possession with the Intent to Distribute and Distribution of Human Growth Hormone

18 U.S.C. § 1512(b)(3)—Witness Tampering

**Carlos Carvalho, DOB 10-27-1975**

21 U.S.C. § 841—Possession with the Intent to Distribute and Distribution of Controlled Substances

21 U.S.C. § 846—Conspiracy to Possess with the Intent to Distribute and to Distribute Controlled Substances

18 U.S.C. § 1956(a)(1)(A)(i)—Money Laundering

**Stevedore Crawford, DOB 12-9-1962**

21 U.S.C. § 841—Possession with the Intent to Distribute and Distribution of Controlled Substances

21 U.S.C. § 846—Conspiracy to Possess with the Intent to Distribute and to Distribute Controlled Substances

**William Covrett, DOB 1-27-1977**

21 U.S.C. § 841—Possession with the Intent to Distribute and Distribution of Controlled Substances

21 U.S.C. § 846—Conspiracy to Possess with the Intent to Distribute and to Distribute Controlled Substances

18 U.S.C. § 1956(a)(1)(A)(i)—Money Laundering

**Benjamin Owings, DOB 3-27-1980**

21 U.S.C. § 841—Possession with the Intent to Distribute and Distribution of Controlled Substances

21 U.S.C. § 846—Conspiracy to Possess with the Intent to Distribute and to Distribute Controlled Substances

21 U.S.C. § 333(e)—Possession with the Intent to Distribute and Distribution of Human Growth Hormone

This affidavit is also being submitted for the purpose of obtaining search warrants for the following locations and cell phones:

### Items and locations related to Nicholas GLASSBURN

Residence located at 97 Rheem St., Delaware, OH 43015, residence of Nicholas GLASSBURN

Cellular phone associated with 740-972-3275, used by Nicholas GLASSBURN

Cellular phone associated with 614-581-4765, used by Nicholas GLASSBURN

Cellular phone associated with 740-417-5843, used by Nicholas GLASSBURN

Residence located at 22 Estelle St., Delaware, OH, used by PERSON A, a person in an intimate relationship with GLASSBURN

Cellular phone associated with 740-815-2859, used by PERSON A

Cellular phone associated with 740-417-5414, used by PERSON A

Cellular phone associated with 740-994-1660, used by a relative of GLASSBURN and in contact with DELCOL'S cell phone

### Items and locations related to Jason DELCOL

Residence located at 201 Aaron Ct., Delaware, OH 43015, residence of Jason DELCOL

2004 White Acura bearing OH license HAS 6097, VIN 19UUA66224A058591

2006 Black Honda Ridgeline bearing OH license 12BSPLD, VIN 2HJYK16516H560194

Cellular phone associated with 740-816-6319, used by Jason DELCOL

### Items related to Carlos CARVALHO

Cellular phone associated with 970-343-9395, used by Carlos CARVALHO

### Items and locations related to Stevedore CRAWFORD

Residence located at 1100 Mediterranean Ave., Columbus, OH 43229, Room #322, Baymont Inn and Suites, residence of Stevedore CRAWFORD

Cellular phone associated with 614-483-9231, used by Stevedore CRAWFORD

1989 Maroon Mercedes-Benz bearing OH license JAYLASD, VIN WDBEA30D8KA833189

**Items and locations related to Benjamin OWINGS**

Residence located at 662 Fern Dr., Delaware, OH 43015, residence of Benjamin OWINGS

Cellular phone associated with 740-360-1934, used by Benjamin OWINGS

**Items related to William COVRETT**

Cellular phone associated with 586-242-7790, used by William COVRETT

The places to be searched and the things to be seized are more particularly described in Attachments A and B. There is probable cause to believe Nicholas GLASSBURN, Jason DELCOL, Stevedore CRAWFORD, William COVRETT, Benjamin OWINGS, Carlos CARVALHO and others are using the above listed locations and devices as means to conduct criminal activity. There is also probable cause that evidence of crime will be present in the places to be searched.

## INVESTIGATIVE BACKGROUND

In June 2017, the Delaware County Drug Task Force (DCDTF), working in conjunction with the Federal Bureau of Investigation (FBI), opened a criminal investigation into Nicholas GLASSBURN. DCDTF gathered evidence that identifies GLASSBURN as a mid-level drug trafficker, operating in the greater Delaware, Ohio area. The investigation of this drug trafficking operation has identified others believed to be sources of supply of the drugs trafficked by GLASSBURN. The investigation has uncovered an active law enforcement officer, Jason DELCOL, who is receiving drugs from and providing drugs to GLASSBURN and at least one other person. The investigation has also shown DELCOL use his position as a law enforcement officer to provide GLASSBURN with information, intervene in criminal cases of GLASSBURN and another drug trafficking associate (OWINGS), provide GLASSBURN with ballistic vests, and corroborate GLASSBURN'S alibi to law enforcement when GLASSBURN was caught transporting drugs in August 2017.

Numerous investigative techniques including physical and electronic surveillance have been used to corroborate information provided by multiple informants and to observe activities consistent with drug trafficking by GLASSBURN, DELCOL and others throughout this investigation.

From October 2017 to December 2017, multiple Federal search warrants were executed to obtain the content of text messages for Nicholas GLASSBURN and Jason DELCOL, as well as for the content of information stored on the cloud associated with the cell phones of GLASSBURN and DELCOL. This information showed conversations consistent with drug trafficking activity by both GLASSBURN and DELCOL. The records for GLASSBURN showed conversations about drug trafficking activities between GLASSBURN and Carlos CARVALHO, between GLASSBURN and Stevedore CRAWFORD, between GLASSBURN and William COVRETT, and between GLASSBURN and others. Text content and stored cloud data for DELCOL showed conversations about drug trafficking activities between DELCOL and GLASSBURN, and between DELCOL and Benjamin OWINGS. Text conversations between GLASSBURN and DELCOL show DELCOL is providing HGH, testosterone and other illegal drugs to

4

GLASSBURN, at least some of which are being purchased by DELCOL from OWINGS, and GLASSBURN is supplying DELCOL with Xanax, Oxycodone or Percocet and other illegal drugs, some of which DELCOL is distributing to OWINGS.

GLASSBURN'S text messages show he is supplied cocaine, crack cocaine and pills by Stevedore CRAWFORD. CRAWFORD'S criminal history includes convictions for Theft by Force, Felonious Assault, Aggravated Robbery and Felony Drug Trafficking.

GLASSBURN'S text messages show he is supplied marijuana by Carlos CARVALHO. CARVALHO'S criminal history includes a conviction for Battery.

GLASSBURN'S text messages show he is supplied marijuana, Xanax and prescription pain pills by William COVRETT, who travels to Michigan to obtain the drugs he distributes to GLASSBURN. William COVRETT'S criminal history includes a charge for Theft without consent and an arrest on November 1, 2017 for possessing drug paraphernalia.

Photos found stored on the cloud account for GLASSBURN included things such as wire transfer receipts, drug ledgers, pink pills, gray pills, blue pills, marijuana, mail addressed to GLASSBURN at 22 Estelle Street, Delaware, Ohio, and images of a boat and Carlos CARVALHO. Photos found stored on the cloud account for DELCOL included things such as vials of Winstrol V, multiple vials of unknown substances, guns, gun parts, a man's hand holding cash fanned out in front of a steering wheel of an Acura and a man's hand holding cash fanned out inside what appears to be DELCOL'S residence from other photos found within DELCOL'S cloud information.

Throughout this investigation, a primary means of communication between subjects has been cellular telephones. GLASSBURN has used at least four cellular telephone numbers throughout this investigation. The cellular telephone numbers identified as being used in this criminal investigation are as follows:

CP1:  740-972-3275, used by and subscribed to Nicholas GLASSBURN at 97 Rheem St., Delaware, OH

CP2:  614-581-4765, used by Nicholas GLASSBURN - a pre-paid cell phone number provided to GLASSBURN'S Probation Officer by PERSON A as a contact number for GLASSBURN

CP3:  740-417-0306, used by Nicholas GLASSBURN – a pre-paid Tracfone

CP4:  740-816-6319, used by and subscribed to by Jason DELCOL at 201 Aaron Ct., Delaware, OH

CP5:  970-343-9395, used by and subscribed to by Carlos CARVALHO at 78 E. Chestnut St., Columbus, OH

CP6:  614-483-9231, used by and subscribed to by Steve CRAWFORD at PO Box 54498, Irvine, CA

CP7:  586-242-7790, used by and subscribed to by William COVRETT, at 1192 Columbus Pike, Delaware, OH

CP8:  740-360-1934, used by Benjamin OWINGS and subscribed to by Benjamin OWINGS at 4433 Gooding Rd., Marion, OH

CP9:  740-815-2859, used by PERSON A and subscribed to by Nicholas GLASSBURN

CP10:  740-417-5843, provided by Nicholas GLASSBURN at his January 31, 2018 arrest as a contact number

CP11:  740-417-5414, provided by PERSON A at her January 31, 2018 arrest as a contact number

CP12:  740-994-1660, provided by PERSON A at her January 22, 2018 traffic stop as a contact number for her, but as belonging to a relative of GLASSBURN

## INFORMATION PROVIDED BY COOPERATING INDIVIDUALS

During the course of this investigation, investigators have received information from at least seven individuals who have been proven reliable and whose information has been corroborated. The majority of these individuals have been interviewed on multiple occasions separate and apart from each other.  These informants reported that Nicholas GLASSBURN sells prescription medications such as Percocet, Vicodin and Suboxone, as well as cocaine, crack cocaine and marijuana.  Two of the informants reported knowing GLASSBURN transports drugs in a lunch box or box within his vehicle.  All informants reported knowledge that GLASSBURN maintains and sells drugs at his residence at 97 Rheem Street in Delaware, OH.  These informants know GLASSBURN is regularly supplied cocaine and crack cocaine from Stevedore CRAWFORD, who lives in Columbus, and GLASSBURN is supplied marijuana from a person named 'Carlos' [known to investigators as Carlos CARVALHO] who resides in or near Sandusky, Ohio.  In the Summer of 2017, one informant estimated GLASSBURN was getting two to four ounces of cocaine a week from CRAWFORD.  And one informant was present when GLASSBURN picked up a duffle bag full of vacuum-sealed bags of marijuana from CARVALHO on his boat at a marina in the Sandusky area.  At that time, GLASSBURN told the informant that CARVALHO had an additional large amount of marijuana stored on the boat.

A number of these informants reported that GLASSBURN was in debt to CARVALHO for approximately $17,000 in the summer of 2017 for marijuana CARVALHO provided.  The informants reported knowing GLASSBURN was able to repay the debt by obtaining money from a woman who had inherited money and who bought crack cocaine from GLASSBURN, as well as by doing labor on CARVALHO'S boat.  According to multiple informants, before GLASSBURN was able to repay the debt, he obtained a ballistic vest from Ohio State Highway Patrol (OSP) Trooper Jason DELCOL, which he then wore to meet with CARVALHO to discuss his outstanding drug debt.  More than one informant reported that GLASSBURN owns a large number of firearms.  GLASSBURN reportedly took one of the firearms with him to meet with CARVALHO while wearing the ballistic vest.  These informants have seen the firearms within plain view at 97 Rheem Street, and two of the informants reported direct knowledge of

GLASSBURN having moved large amounts of long guns and handguns in and out of 97 Rheem Street.

Multiple informants reported knowing Trooper DELCOL protected GLASSBURN. They reported knowing DELCOL and GLASSBURN have been friends for many years, that DELCOL gives GLASSBURN inside information such as what types of license plates indicate undercover police vehicles, that DELCOL makes frequent visits, that are short in duration, to GLASSBURN'S residence at 97 Rheem Street in Delaware and that GLASSBURN supplies DELCOL with prescription drugs. One informant reported GLASSBURN makes anyone who is in the house leave the room when DELCOL arrives. Another informant reported seeing GLASSBURN hand a baggie of pills to DELCOL while at 97 Rheem Street. One informant reported seeing DELCOL carry two ballistic vests into the back entrance of 97 Rheem Street. This was around the time of the reporting that GLASSBURN owed CARVALHO the large sum of money. This reporting is consistent with another time, on April 14, 2017, when DELCOL, using CP4, texted GLASSBURN a message on CP1 saying, "Hey I am cleaning would u want a vest? Not a regular vest." To which GLASSBURN replied, "Yes." (Throughout this affidavit, your affiant has reproduced text messages verbatim, including any errors, rather than writing [sic] after each error.)

An extensive amount of text messages associated with CP1 and CP4, CP5, CP6, CP7, CP8 and CP9, which were obtained as a result of the search warrants, corroborate much of what was reported by the informants and observed by surveillance methods in this investigation.

For example, text messages were found to coincide in time with informant reporting regarding GLASSBURN owing CARVALHO money. Text messages obtained from Verizon Wireless Network (hereinafter referred to as VZW) dated July 10, 2017 for CP1, show GLASSBURN, using CP1 and PERSON A, using 740-815-2859 (hereinafter referred to as CP9), discussing a desperate need for money and ways GLASSBURN could raise money, followed by GLASSBURN traveling to Port Clinton where CARVALHO lives after it appears he obtained the money to repay CARVALHO.

> On July 10, 2017, at approximately 12:24pm, PERSON A sent a text from CP9 to CP1 saying, "And also what does she think $3,400 is going to do out of a total of $17,000 owed????"

> Later in the day on July 10, 2017, at approximately 5:42pm and 6:08pm, text messages between GLASSBURN, using CP1, and PERSON A, using CP9, show discussions about check cashing businesses such as Loanmax and Cashland after it appears from the content of their texts that GLASSBURN was able to meet with someone who gave him money.

> After PERSON A texted him, "Are you there yet," GLASSBURN responded at approximately 12:30am on July 11, 2017, "Yes. Travelodge room 112 Port Clinton."

Also, there are text messages that corroborate informant information regarding guns being moved. For example, on July 28, 2017 at approximately 8:36am, a text message was sent from GLASSBURN, using CP1, to PERSON A, using CP9, which says: "Put guns with the other

inbox truck. Decided not to leave other bags there. That's just wrong without her knowing...so I am running them to Marion. Be back shortly. Waiting for a response from Jason also." The Jason referred to in this text is believed to be Jason DELCOL.

## GLASSBURN AND FIREARMS

In addition to informant information provided regarding GLASSBURN'S possession of firearms, on November 30, 2017, at approximately 4:30am, surveillance observed an unknown female arrive in a vehicle at 97 Rheem Street, and she along with GLASSBURN carried what appeared to be eleven long guns into the residence from the vehicle. On the following day, December 1, 2017, at approximately 11:03am, GLASSBURN and a different female were observed carrying four long guns and what appeared to be two handgun boxes out of 97 Rheem Street and placed them in a Nissan Pathfinder, which had been driven by GLASSBURN. The two left in the Pathfinder and the guns were never seen by surveillance again.

During a traffic stop of PERSON A on January 22, 2018, five long guns were removed from her vehicle. Two handguns were removed from her vehicle on January 31, 2018 when she was arrested on an outstanding warrant for Contributing to the Delinquency of a Minor. Surveillance showed PERSON A was at 97 Rheem St. and 22 Estelle St. at some point during each of the days she was encountered by law enforcement. All guns were seized by law enforcement for safekeeping. Investigation had shown PERSON A had taken numerous guns to be pawned, one of which was stolen.

Your Affiant has reviewed GLASSBURN'S criminal history from the Law Enforcement Automated Network. The criminal history lists arrests for aggravated burglary, complicity to aggravated burglary, domestic violence and assault. The criminal history shows GLASSBURN was sentenced to serve 5 to 15 years for complicity to felonious assault and 18 months for breaking and entering, to be served consecutive with a 6 month sentence for illegal conveyance of weapons. GLASSBURN began serving his prison sentence for those crimes on May 9, 1990 and was paroled on June 1, 1999. Because GLASSBURN has been convicted of a crime punishable by imprisonment for a term exceeding one year, federal law prohibits him from possessing a firearm.

## DRUG TRAFFICKING ACTIVITY BY GLASSBURN

Investigative methods have confirmed that, in addition to DELCOL, GLASSBURN has at least three main sources of supply for the drugs he is selling.

Carlos CARVALHO

CARVALHO was identified by three separate informants as the supplier of marijuana to GLASSBURN. Two of the informants had been to a boat owned by CARVALHO where marijuana was stored. Investigation has revealed the boat was dry docked at the Sandusky Harbor Marina, 1 Huron Street, Sandusky, Ohio and CARVALHO resides at 703 Lincoln Ct. Apt. A, Port Clinton, Ohio. Analysis of toll records shows CARVALHO, using CP5, and GLASSBURN, using CP1, CP2 and CP3, have had 1282 contacts from June 1, 2017 to January 5, 2018. [The absence of calls since January 5, 2018, could be due to the traffic stop of CARVALHO described below.] Investigation has shown GLASSBURN has traveled on

multiple occasions to Port Clinton to visit CARVALHO and CARVALHO has visited GLASSBURN'S residence at 97 Rheem Street on at least four occasions since October 5, 2017.

Court authorized electronic surveillance has shown that on multiple occasions GLASSBURN called and texted with DELCOL at times immediately surrounding his trips to Port Clinton to visit Carlos CARVALHO. This is significant because text conversations between GLASSBURN and CARVALHO show GLASSBURN travels to the Port Clinton/Sandusky area with large sums of money for drug purchases and on some occasions, illegal narcotics, and it is known to investigators that DELCOL has covered for GLASSBURN when he was encountered by law enforcement with drugs in Mt. Gilead, Ohio. On Sunday August 27, 2017, DCDTF established an electronic virtual "fence", otherwise known as a geo-fence, around CP1, which would send an alert when CP1 entered a geographic location in the Sandusky, Ohio area, near the marina where, according to one informant, CARVALHO'S boat is docked. At 8:40 pm, CP1 received an incoming text message from DELCOL, using CP4. At 10:07 pm, CP1 entered the geo fence surrounding the Sandusky, Ohio area and Pen Register data indicated CP1 was hitting on cellular towers in the Sandusky, Ohio area. This continued through approximately 11:00pm when CP1 returned to the Delaware, Ohio cellular towers.

In another example, on September 7, 2017, DCDTF received notification at 8:25pm that CP1 was hitting cellular towers in the Sandusky, Ohio area. CP1 returned to hitting the Delaware, Ohio towers at approximately midnight on September 7, 2017. A closer review of Pen Registers reflected that CP1 had departed Delaware on September 7, 2017, in the early morning hours and hit on cellular towers in the Port Clinton, Ohio area throughout the day until 8:25pm when CP1 was hitting the Sandusky, Ohio towers. CP1 had received 6 incoming text messages from CP4 and placed one outgoing text message to CP4 between 10:28am and 6:22pm on September 7, 2017. CP1 sent 6 text messages to CP5, CARVALHO'S cell phone, and received 6 text messages from CP5 between the hours of 2:07am and 4:00pm on September 7, 2017. The content of the above referenced September 7, 2017 text messages were not included in information provided by VZW in response to the October 2, 2017 search warrant for information stored by VZW.

Text conversations between CARVALHO, using CP5, and GLASSBURN, using CP1, show the use of coded language to discuss drug trafficking transactions. Terms such as "tshirts" and "seminars" appear to mean marijuana and trips to Colorado to pick up marijuana. [It should be noted that while it is possible CARVALHO participates in professional seminars in Colorado, these seminars would be of no relevance to GLASSBURN. Additionally, on some trips monitored by law enforcement, CARVALHO arrived in Colorado during non-business hours and turned immediately around to head back to Ohio.] Your Affiant knows drug traffickers use coded language when communicating in an effort to avoid detection by law enforcement.

One example of a text conversation containing code occurred on May 27, 2017, when CARVALHO texted GLASSBURN and said, in part, "The tshirts work good?" GLASSBURN replied, "They've gone over really well. I'm a little slower getting rid of them than usual getting back in the groove but everything is fine." In another such conversation, on June 6, 2017, CARVALHO texted GLASSBURN, "how is the tshirt good??". GLASSBURN replied, "Slow but good. This weekend will be the first of the month. Im expecting sale to be back on track." [Your Affiant knows the first of the month is when public assistance checks are delivered, which

provides some drug users the money to purchase drugs.] CARVALHO responds, "Cool. I'll try to set a trip for end of the month then."

In another series of texts on September 21, 2017, CARVALHO texted GLASSBURN and said in part, "Also my seminar is been plan for the 29th. Next Friday. You should be done with tshirts?! Let me know brother." GLASSBURN replied in part, "Hey there big dog Yes we should be done and everything should be fine for the seminar."

Text messages and surveillance show that CARVALHO often meets with GLASSBURN to collect money before making trips to Colorado. They sometimes refer to the money as "pictures". For the trip planned for September 29, 2017, referred to in the previous paragraph, text records show CARVALHO texted GLASSBURN on September 26, 2017, and said in part, "See you Thursday? Are u coming up I'm going down?" GLASSBURN did not reply. On September 28, 2017, CARVALHO texted GLASSBURN and said, "hey brother do I see u tomorrow? U coming up I'm going down? Let me know boss."

As reported by informants, there are times when CARVALHO needed to collect money from GLASSBURN but GLASSBURN was non responsive. In text messages, CARVALHO persisted in trying to determine when GLASSBURN would come through with money. In one text on October 10, 2017, CARVALHO said to GLASSBURN, "Hey boss. Hope we everything is on schedule. Our friends are not so happy with me to not show up today :( Don't be to late I need to go to the bed early brother." There was no response from GLASSBURN and after another text prompting GLASSBURN to answer, CARVALHO texted on October 11, 2017, "Hey brother I'm in a really bad situation here. You need to talk to me. What is going on?", and "I been calling you all day?", and "????????". On October 13, 2017, GLASSBURN texted, "I'm stuck until 9am when the bank opens brother". CARVALHO told GLASSBURN he needed to leave for Colorado and that he would wait to meet up with GLASSBURN because, as he said on October 15, 2017, he "can't leave without the picture."

Sometimes GLASSBURN receives drugs from CARVALHO on consignment and discussions can be seen in text messages about the repayment. For example, on June 1, 2017, it appears GLASSBURN had someone deliver money to CARVALHO and CARVALHO texted GLASSBURN, "Hey brother 3730 on the package [package emoji]. I don't know who count that but total here was 3730. 270 short. What is the schedule???" GLASSBURN replied, "Wow….Sticky fingers. [pouting face emoji]. I'll bring the difference. And go over schedule with you." It is presumed the schedule refers to the repayment schedule.

On August 28, 2017, text conversations between GLASSBURN and CARVALHO indicate GLASSBURN is sending money to Colorado for CARVALHO via a wire transfer through Walmart. As will be seen later in this affidavit, GLASSBURN also uses Walmart money transfers in the name of PERSON B to send large amounts of cash to purchase drugs in Michigan. CARVALHO says, "Hey boss did you set up the Walmart thing?" Later, GLASSBURN told CARVALHO he will have it taken care of by 8:30. On August 30, 2017, CARVALHO told GLASSBURN and said, in part, "I'm meeting the Landlord tomorrow. Did you send me the walmart thing?? There was no reply from GLASSBURN until August 31, 2017, when he texted CARVALHO and said, "Need a State it's being sent to….Colorado?" , and "I guess what state is going to be picked up in." CARVALHO replies, "Yes Colorado."

GLASSBURN then writes, "To yo from [PERSON B.]" Your Affiant knows drug traffickers use wire transfers to send large sums of cash to avoid the risk of encountering law enforcement while driving with cash.

On October 9, 2017, CARVALHO was seen arriving at 97 Rheem Street where he waited for GLASSBURN to arrive. After following GLASSBURN into the residence, CARVALHO came back out of the house rolling a medium to large size bag that appeared to have some weight from GLASSBURN'S house to his vehicle. He loaded it inside the passenger compartment. That same bag was observed, outside of his apartment doorway at 703 Lincoln Ct., Apt. A, Port Clinton, Ohio, in a common hallway approximately seven days later on October 16, 2017, while CARVALHO was making a trip to Colorado. It was sitting next to items that appeared to be trash, as if it had been placed there to be discarded.

On October 18, 2017, surveillance observed CARVALHO arriving at GLASSBURN'S residence at 97 Rheem Street in Delaware. CARVALHO went into GLASSBURN'S house upon his arrival and then shortly thereafter came back out to his vehicle to retrieve a plastic bag that appeared to have a knot tied in the top and took it back into GLASSBURN'S residence. Surveillance again observed CARVALHO visiting GLASSBURN'S Rheem Street address on October 30, 2017.

CARVALHO is known by investigators to have taken at least five trips to Colorado during this investigation. On October 28, 2017, after one of many discussions via text with GLASSBURN about getting money from GLASSBURN before he travels to Colorado, CARVALHO tells GLASSBURN, "Don't forget to clean your phones."

On January 4, 2018, law enforcement authorities conducted a traffic stop of CARVALHO near Lincoln, Nebraska. CARVALHO was returning to Ohio from Colorado. He was found to be in possession of approximately 4.3 pounds of marijuana and some marijuana edibles. CARVALHO declined to provide detailed information regarding his source of marijuana supply in Colorado, but he agreed to cooperate with officials. He described himself as a "weed guy," and admitted to engaging in marijuana trafficking transactions with GLASSBURN. Although CARVALHO admitted to criminal wrongdoing, he seemed to minimize his wrongdoing, in light of phone records, text messages, surveillance observations, informant information, and information (described below) provided from GLASSBURN.

As will be discussed in detail later in this affidavit, GLASSBURN was arrested on an outstanding warrant on January 31, 2018. After being advised of his Miranda rights, GLASSBURN waived his rights and told investigators, among other things, that CARVALHO has supplied him with approximately seven pounds of marijuana per month for the last 2 ½ years. Put together, that would total approximately 210 pounds (95 kilograms) of marijuana. GLASSBURN reported CARVALHO picks up the marijuana from Colorado himself.

Stevedore CRAWFORD

Two informants, one with direct access and knowledge, identified CRAWFORD as GLASSBURN'S source of supply for cocaine and crack cocaine. Analysis of toll records shows

CRAWFORD, using CP6, and GLASSBURN, using CP1, CP2 and CP3, have had 3,037 contacts from June 1, 2017 to February 9, 2018.

Court authorized electronic surveillance has shown GLASSBURN and PERSON A traveling separately to the area of CRAWFORD'S residence between October and December, 2017, the Baymont Inn and Suites located at 1100 Mediterranean Ave., Columbus, OH, on at least three occasions during the course of this investigation. The visits are less than 10 minutes in duration with GLASSBURN and PERSON A returning directly to 97 Rheem Street.

Through informant information and surveillance, it is known that CRAWFORD frequently travels to Delaware to supply GLASSBURN and others with cocaine and crack cocaine.

Text conversations between CRAWFORD, using CP6, and GLASSBURN, using CP1, show discussions consistent with drug trafficking. However, the majority of conversations between GLASSBURN and CRAWFORD appear to be via phone call rather than text. Of the 2,925 total contacts, 2,815 of those are phone calls as compared to only 110 text messages. Because there are numerous text conversations where amounts and types of drugs being bought and sold are discussed, based on your affiant's training and experience, it is believed the number of phone calls indicates a cautiousness about what is written in text messages.

For example on April 20, 2017, in a text conversation, GLASSBURN said to CRAWFORD, "7.5 love to be cut with maybe creatine…..Shaled up right off the bat. But the product is good." CRAWFORD replied, "Ok yeah mine did same product real cool compared to other." GLASSBURN said, "Absolutely….biggest thing is the bee people like it." CRAWFORD then said, "That makes it 9.5 lol okay later bro." GLASSBURN replied, "Lost 5.7 GM's recooking. Product….is ok…but not awesome by any means." From your affiant's training and experience it is known this conversation shows GLASSBURN discussing the quality of cocaine sold to him by CRAWFORD and how the cocaine reacted when it was cut with a substance such as creatine powder and cooked into crack cocaine.

In a text conversation between GLASSBURN and CRAWFORD on May 2, 2017, CRAWFORD said, "Seeing if you were cool before i start getting rid of this." GLASSBURN said, "I could do half." CRAWFORD then asked, "Of flour or candy". GLASSBURN replied, "Candy". Later that day, GLASSBURN sent CRAWFORD a text message saying, "Correction," followed by another text message saying "Just a whole one of flower." From training and experience, your affiant knows the two men are discussing GLASSBURN initially agreeing to purchase what is likely a half-ounce of crack cocaine ("candy"), and then changing his purchase to what is likely a whole ounce of powder cocaine ("flower") from CRAWFORD.

On May 31, 2017, GLASSBURN and CRAWFORD discussed cocaine that is a pinkish color and how it was selling well for GLASSBURN. GLASSBURN texted, "Pink is a really good success. Cooked also a very good success. Actually called both excellent. Would do the pink." CRAWFORD responded, "Truly what we needed to have happen. Kick ass bro." GLASSBURN then responds, "Can you grab a whole one of hard tonight. I'll run back down", and "Do the pink one bro." Your Affiant knows from training and experience that GLASSBURN is asking CRAWFORD to obtain one ounce of crack cocaine that is cooked from cocaine that is pinkish in color.

On January 10, 2018, investigators observed CRAWFORD conduct what appeared to be drug trafficking transactions throughout Columbus and Delaware. CRAWFORD began and ended his travels through Delaware and Columbus at 1100 Mediterranean Ave., Columbus, OH, the Baymont Inn and Suites. For portions of his travels that day, CRAWFORD had a minor female with him.

On February 8, 2018, investigators observed CRAWFORD leave 1100 Mediterranean Ave., Columbus, OH, the Baymont Inn and Suites with a minor female. CRAWFORD'S activity was consistent with conducting drug tracking transactions. For all activities on January 10, 2018 and on February 8, 2018, CRAWFORD was driving in a maroon Mercedes bearing Ohio license JAYLASD, VIN WDBEA30D8KA833189, registered to him.

On January 3, 2018, investigators determined CRAWFORD was renting room #326 in the Baymont Inn and Suites located at 1100 Mediterranean Ave., Columbus, Ohio. On February 26, 2018, investigators determined CRAWFORD moved to room 322.

William COVRETT

Analysis of telephone toll records shows William COVRETT, using CP7, and GLASSBURN, using CP1, CP2 and CP3, have had 963 contacts from June 1, 2017 to January 3, 2018. GLASSBURN and COVRETT have not had contact since January 3, 2018 on any known numbers for GLASSBURN. One possible explanation for this could be that at certain times since at least January 2018, GLASSBURN has turned off his phones and has obtained a new phone number that he did not provide to COVRETT. Records obtained for April 1, 2017 through October 29, 2017, of text messages between GLASSBURN and William COVRETT, show COVRETT supplying GLASSBURN on multiple occasions with marijuana, Xanax (referred to as buses) and some type of opioid pills (referred to as grays), among others. COVRETT travels to Michigan to purchase at least some of the drugs he supplies to GLASSBURN. Text messages and pictures of receipts stored in the cloud for CP1 show GLASSBURN using the same nominee, PERSON B, as he used to send money to CARVALHO in Colorado, to wire transfer funds to COVRETT in Michigan. Records obtained from Walmart indicate that in 2015, GLASSBURN wire transferred over $43,000 in approximately 26 different transactions to COVRETT, and from October 25, 2016 through March 16, 2017, GLASSBURN transferred over $11,000 in approximately ten different transactions to COVRETT. Some of these transfers were in GLASSBURN's own name, some in PERSON A'S name and some in PERSON B'S name.

In many text messages between GLASSBURN and COVRETT, the two discuss one of COVRETT'S sources of supply in Michigan, whom he refers to as Mal. For example, on May 25, 2017, COVRETT texted GLASSBURN saying, "Mal said he'll be ready sometime this weekend . 100grays $1500. +25owed. 200 buesses $1000. $2500 total.  You can pay $2100 take $400 off my tab." Then there is a series of text messages beginning on May 26, 2017 and ending on May 29, 2017, where COVRETT waited to hear from GLASSBURN about purchasing those drugs from Mal. On May 30, 2017, COVRETT texted GLASSBURN, "Just talked to mal. Told him id be up tonight." On May 31, 2017, COVRETT told GLASSBURN he was headed to Delaware to pick up money from GLASSBURN for the drugs to be purchased from Mal. GLASSBURN responded, "I'm on a run buddy trying to put everything together. I'll hit you up

in abouhour." COVRETT replied in part, "Ok bro. I just dont want us to lose this hustle with the vitamins from michigan. We worked way to hard and long to let them find someone else to take our place. Lol." GLASSBURN texted, "Right on." A little over an hour later, COVRETT tells GLASSBURN the number and strength of opiate pills he will be purchasing from Mal by texting, "130 20s. 50 30s." Based on your affiant's training and experience it is known that the word "vitamins" is referring to pills.

On the following day, June 1, 2017, COVRETT and GLASSBURN discuss the prices of pills coming from Michigan. COVRETT texted in part, "$1950 for 130 grays. $1000 for 50 blues. Total is $2950." GLASSBURN indicated he was having trouble getting the money together but texted, "I'll make it happen somehow." Based on your affiant's training and experience it is known that the words "grays" and "blues" are referring to various types of opioid pills.

Text messages and photos sent from COVRETT to GLASSBURN indicate the two men invested in a marijuana growing operation:

> On April 18, 2017, COVRETT sent a text message to GLASSBURN saying "Babys!!!!" Attached to the text message was a photo of at least 17 potted marijuana plants.

> Fourteen minutes later, GLASSBURN responded, "Awesome [smiling face with smiling eyes emoji]."

> On April 21, 2017, COVRETT sent a series of text messages to GLASSBURN about the marijuana growing operation. Among other messages, COVRETT texted, "Hit me up bud gotta talk to u about clones." COVRETT then sent two messages with no text, but with screenshots attached. The screenshots showed portions of another text message conversation COVRETT was having with a person named "Brian." The screenshots showed "Brian" texting COVRETT, "Hi .. We'll be moving out of here the beginning of the week! I will need ther money $$ for housing them, because my electric bill with high the past three months." Then "Brian" sent a photo of one or more marijuana plants. The screenshots showed that, in response, COVRETT texted "Brian," "OK let me talk to my partner in crime. I got $200 in glove box out back in dads old truck. Let my call my partner in crime in ohio ill get u the rest. Ill come get them late tonight sometime." After sending those screenshots, COVRETT texted GLASSBURN, "Call me bro." Then COVRETT texted, "Bro i hope u realize how small of a price it'll be to pay for these plants. Come fall you and i wont need to buy green from anyone for a long time. Im gonna be a planting machine come late june and jul."

> On April 23, 2017, COVRETT sent four text messages with photos, each of which depicted a marijuana growing operation. The first message contained no text, but showed at least 5 marijuana plants. The second message contained no text, but showed at least 3 marijuana plants and a white plastic jug. The third message said, "Put this is for scale. To give u idea how big they are." The third message had a photo attached of a white plastic jug with a tape measure next to it. The fourth message said "Hope you like what u see bro. You and i are gonna be in great shape. See you soon." The fourth message had a photo attached of a hand holding a marijuana plant and the soil it was planted in.

On April 30, 2017, COVRETT sent GLASSBURN a screenshot of another text message conversation offering "some 750," which seems to reference prescription pills.

On May 3, 2017, COVRETT sent GLASSBURN a text message saying, "I got them. But i don't have my car. Waiting on dad. Ill be there adap." Attached to the text message was a photo of a prescription pill bottle. One minute later, GLASSBURN replied, "Ok.cool.. did you get Ms Walker?"

On May 5, 2017, COVRETT sent GLASSBURN a text message saying, "Cherry Pie and Death Star." Attached to the text message was a photo of a baggie of marijuana.

On May 21, 2017, COVRETT sent GLASSBURN a text message with no text, but attached a screenshot of a text message conversation with another individual. The other person wrote, "I have a hundred foot balls." COVRETT replied, "Xanax?" The other person wrote, "Ya."

On July 18, 2017, COVRETT sent GLASSBURN a text message with no text, but attached a photo of a baggie of pills.

Text messages also show GLASSBURN supplying COVRETT with Xanax, Adderall and Suboxone with language similar to the language referenced above.

Trash Recoveries from Locations Associated with GLASSBURN'S Drug/Gun Activity

Investigators have obtained trash discarded at the curbside of the following addresses with the following results:

a. 97 Rheem Street, Delaware, OH: Trash has been pulled from this address on five occasions from September 11, 2017 to January 29, 2018. All five trash pulls from this address produced positive results, with the trash containing items consistent with drug use and drug trafficking. Examples of items found discarded in the trash have been items such as syringes, cut corners of plastic baggies, plastic baggies, cut straws, razor blades, among other items indicative of drug use and drug trafficking. Some of the drug paraphernalia recovered had white powder residue that field-tested presumptive positive for cocaine. Mail found in the trash included a letter addressed to 97 Rheem St. to Nicholas Glassburn, mail addressed to Nicholas Glassburn at 22 Estelle St. Delaware, Ohio, and mail addressed to a person investigators believe helped GLASSBURN pay off his drug debt to CARVALHO, described above. Also found were several drug ledgers and three empty plastic containers that contained marijuana residue and a strong odor of marijuana, empty vacuum sealed plastic bags and an old military style tactical magazine carrier.

b. 22 Estelle Street, Delaware, OH: Trash has been pulled from this address on five occasions from December 11, 2017 to January 29, 2018. Three of the five trash pulls have produced positive results for a presence of weapons and drugs at the location. Trash pulled from this address produced mail addressed to 22 Estelle Street, a torn box for a .22 caliber ammunition dispenser, an empty box of .22 long rifle ammunition, an empty box of 9mm tap rounds and in the most recent trash pull on January 29, 2018, four used syringes and several torn pieces of plastic bags.

## DRUG TRAFFICKING ACTIVITY BY DELCOL

Investigative methods have confirmed that DELCOL has at least two individuals to whom he supplies drugs, and from whom he receives drugs.

<u>Nicholas GLASSBURN</u>

On July 17, 2017, DCDTF detectives conducted surveillance at the GLASSBURN residence. The Pen Register was active which allowed detectives to observe live calls at the time of the surveillance. GLASSBURN had left his residence in the afternoon driving one of his known vehicles, a silver Toyota 4Runner, bearing Ohio license plate GYV-7802. DCDTF detectives observed GLASSBURN conduct meetings short in duration, one of which was a hand-to-hand exchange from his vehicle passenger's side window. GLASSBURN returned to his residence. From approximately 1:19pm to 1:51pm, according to CP1's Pen Register, there were 4 incoming and 3 outgoing text message communications between CP1 and DELCOL'S cellular phone number, CP4. CP4 is subscribed to by DELCOL, is associated with DELCOL in law enforcement databases, and is also the number used by a Mt. Gilead officer to contact DELCOL on August 9, 2017, as will be discussed later in this Affidavit. Then at approximately 4:31pm DELCOL, using CP4, sent a text message to GLASSBURN, on CP1. DCDTF established surveillance in area of the GLASSBURN residence shortly thereafter and DELCOL sent 6 additional text messages to GLASSBURN. During that time, GLASSBURN sent 2 outgoing text messages to DELCOL. DCDTF surveillance observed DELCOL arrive in the area of the GLASSBURN residence at approximately 5:24pm, driving a blue Mercedes bearing only a rear Ohio registration plate of GOA-8170. This vehicle is registered to a person who lives with DELCOL. There were no other occupants in the vehicle. At approximately 5:27pm DELCOL parked at the front of GLASSBURN'S residence. At approximately 5:35pm DELCOL was observed leaving the GLASSBURN residence in the blue Mercedes. There were no further cellular communications captured on the Pen Register between GLASSBURN and DELCOL on July 17, 2017. DELCOL was observed by DCDTF detectives leaving the area by himself in the blue Mercedes sedan. The content of the above referenced July 17, 2017 text messages were not included in information provided by VZW in response to an October 2, 2017 search warrant for information stored by VZW.

On Friday July 21, 2017, Detectives set up surveillance in the area of GLASSBURN'S residence after observing Pen Register activity between GLASSBURN and DELCOL, which began at approximately 7:10pm. At approximately 7:49pm, a detective observed DELCOL'S blue Mercedes sedan parked at the front of the GLASSBURN residence. DELCOL departed at approximately 8:04pm from the front of the GLASSBURN residence. The Pen Register reflected 8 calls/text messages between CP1 and CP4 from approximately 7:10pm to 11:15pm. There were no records provided by VZW for the date of July 21, 2017.

On Wednesday August 23, 2017, DCDTF detectives collected the curbside trash, set out for pick-up, from DELCOL'S residence located at 201 Aaron Court, Delaware, Ohio. There were documents in the trash addressed to DELCOL at the residence where the trash was collected. There were two prescription bottles in DELCOL'S name for Alprazolam and Tramadol. Investigation has shown that DELCOL has been prescribed controlled substances.

On September 20, 2017, DCDTF detectives collected the curbside trash, set out for pick-up, from DELCOL'S residence located at 201 Aaron Court, Delaware, Ohio and found an empty prescription bottle of 50mg tramadol with DELCOL'S name, a torn piece of a prescription for testosterone and several empty packages of gun accessories.

On January 18, 2018, DCDTF detectives collected the curbside trash set out for pick-up from 201 Aaron Court, and found mail addressed to DELCOL family members at 201 Aaron Court, a two piece high profile gun scope ring box that was empty and a used syringe.

On February 14, 2018, DCDTF detectives collected the curbside trash set out from 201 Aaron Court and found mail addressed to Jason DELCOL, three empty boxes of prescription Testosterone CYP 200 milligram which were written on January 15, 2018, empty packages that had contained gun parts and an empty foil package that had contained a Clonidine patch.

On February 21, 2018, DCDTF detectives collected the curbside trash set out from 201 Aaron Court and found mail addressed to Jason DELCOL, one used syringe, an empty prescription bottle for Jason DELCOL for Tramadol, a receipt from Kroger indicating the purchase of Tramadol, an empty package for a gun part, an empty package for a gun sling and a packet of Delaware Municipal court documents for Nicholas GLASSBURN.

The FBI installed cameras to assist with surveillance of GLASSBURN'S residence. Using the cameras, law enforcement has observed DELCOL visiting GLASSBURN'S residence at 97 Rheem Street on more than sixteen occasions since October 5, 2017. As described above, in the middle of 2017, DELCOL was observed by physical surveillance present at the GLASSBURN residence in a blue Mercedes. Upon installation of the cameras, DELCOL has been observed arriving driving a 2004 White Acura bearing OH license HAS 6097. DELCOL has also arrived driving his OSP marked cruiser and wearing a uniform, complete with a gun belt, during at least two of those visits. The majority of visits were ten minutes or less. On some visits DELCOL can be seen going into or out of 97 Rheem Street with his hands in his pockets; however on a few occasions he can be seen carrying a bag or small item into or out of the residence. On at least two visits DELCOL can be seen checking the mailbox of 97 Rheem Street; this includes one time while in uniform. From text messages obtained from GLASSBURN'S phone, CP1, investigators know GLASSBURN and his drug customers make drug and money exchanges using the mailbox at 97 Rheem Street. It is known to investigators that, for much of the period of investigation, DELCOL typically took his OSP cruiser home after his shift. The cruiser has been observed on numerous occasions parked in the front of 201 Aaron Ct., Delaware, Ohio. However, it should be noted that investigation has shown as of at least February 1, 2018, DELCOL lost the privilege to take the cruiser home after his shift. Therefore, as of February 1, 2018, it is possible others have had access to the cruiser and may have driven the cruiser during shifts other than the shift when DELCOL would be driving it.

Consistent with surveillance observations, trash pulls and informant information, text message content for CP1 and CP4 obtained pursuant to federal search warrants show conversations between DELCOL and GLASSBURN about drug trafficking transactions. There are hundreds of text messages from April 2017 through October 2017, between DELCOL and GLASSBURN discussing buying and selling various types of drugs and drug paraphernalia such as HGH, testosterone, needles, syringes, Xanax, Percocet and possibly other opioid pills, as well as

conversations about when and where to exchange the drugs and about payment for the drugs. Text messages show both DELCOL and GLASSBURN have arranged to visit or visited each other's residences to conduct drug trafficking transactions. Those residences are located at 201 Aaron Ct., Delaware, Ohio and 97 Rheem Street, Delaware, Ohio. Below are examples of just a few such conversations:

> Text conversation, in part, on April 4, 2017, using coded language or the street slang "bars", which is believed by your affiant through training and experience to be Xanax, which is supplied to DELCOL by GLASSBURN:
>
> > DELCOL: U still have any left
> >
> > GLASSBURN: Yes. Bars
> >
> > DELCOL: K, get with u after work
> >
> > DELCOL: U available anytime soon
> >
> > GLASSBURN: Yes. 20 min. My place
> >
> > DELCOL: OK. Can u spot me till I get paid? If not I understand
> >
> > GLASSBURN: Sure can.
> >
> > DELCOL: Ok thanks
>
> Text conversations, in part, between June 11, 2017 and June 13, 2017, using coded language or the street slang "bars and balls" and "7.5's", which are believed by your affiant through training and experience to be Xanax and Percocet or Oxycodone, which is supplied to DELCOL by GLASSBURN:
>
> > GLASSBURN: I got those bro. Both you asked about. Bars and balls. Some things for your old ass arthritis to LOL
> >
> > DELCOL: Right, U gonna be there in about an hour or so. Does later today or tomorrow work better for u to grab those from u. Think about 30 balls
> >
> > GLASSBURN: I will be home about 9:30 tonight. If that works for you. Or tomorrow works also.
> >
> > DELCOL: I will have to do tomorrow if that's cool. Balls and maybe a few more 7.5 if u have them or whatever. But I will take the balls
> >
> > GLASSBURN: Gotcha bro
> >
> > DELCOL: Cool see u tomorrow
>
> Text conversations, in part, between September 8, 2017 and September 19, 2017, about HGH or another type of injectable steroid, which is supplied to GLASSBURN by

18

DELCOL, and about DELCOL, using coded language or street slang, seeking "footballs" or "30's", which are believed by your affiant through training and experience to be Xanax and 30 milligram Percocet or Oxycodone pills:

DELCOL: Did u get any footballs yet

GLASSBURN: No football game yet

DELCOL: K will be over after Court be about 130 or 2 have items for

DELCOL: Ur stuff is in already.

DELCOL: Let me know how that stuff works for

GLASSBURN: Sure will Bro..

DELCOL: Need u to save me a few 30s I will get u the cash for them

DELCOL: U gonna be home in the morning?

DELCOL: Call me. Forgot to tell u try that new stuff today. Because if u like it and want more I will get it. He didn't have many of those but they are being held to see if u want them or not

GLASSBURN: 1 ml..? And what is it. In arm correct?

DELCOL: Yep 1ml in arm it's prop. On steroids!!! Lol. Triple the regular does

GLASSBURN: [smiling face with smiling eyes emoji and smiling face with sunglasses emoji]

Text conversations, in part, between June 23, 2017 and June 29, 2017, about HGH, which is supplied to GLASSBURN by DELCOL:

DELCOL: U gonna be around later today got [moneybags emoji]. Have it tonight

GLASSBURN: You are the man [winking face emoji]

DELCOL: U gonna be there

GLASSBURN: Yes

DELCOL: K. Going to get it then headed over

GLASSBURN: Cool deal. What do you happen to have tips and a syringe? I usually use a one to pull it up in a 3/4 to shoot it with

DELCOL: Got it all

GLASSBURN:  Freekin awesome [smiling face with smiling eyes emoji]

DELCOL:  Should have HGH shortly

GLASSBURN:  You are the best bro

DELCOL:  I won't go that far but I will hook u up. He said Friday at the latest. 2 month supply is 500.00 for 10 bottles

GLASSBURN:  Right on... Thank you so much brother... Can I give it to you after payroll Friday or Saturday morning

DELCOL:  Ok I will get it

GLASSBURN:  I can make it happen tomorrow bro. Some things should come together for me

DELCOL:  Ok. I will call you in the afternoon I gotta hook up with him first then I'll get it to u.

DELCOL references a source of supply in text conversations with GLASSBURN.  Investigation has shown that at least one of DELCOL'S suppliers of steroids and pills is Benjamin OWINGS. OWINGS is also a customer of DELCOL, buying and receiving pills.  Text messages show DELCOL is a middleman between GLASSBURN and OWINGS.  OWINGS supplies steroids to DELCOL, which DELCOL sells to GLASSBURN, and GLASSBURN sells pills to DELCOL, which DELCOL sells or gives to OWINGS.

Ben OWINGS

Text message content obtained for DELCOL'S cell phone, CP4, reveals text conversations between DELCOL and OWINGS, using CP8, about methods, prices and types of illegal drugs DELCOL is buying from and selling to OWINGS.  Some of those drugs include HGH, Testosterone Propionate, Winstrol V, Viagra, Percocet, Oxycodone and possibly other opioid pills.  These texts also include conversations about when and where to exchange the drugs and about payment for the drugs.  Text messages show both DELCOL and OWINGS have visited each other's residences to conduct drug trafficking transactions.  Those residences are located at 201 Aaron Ct., Delaware, Ohio and 662 Fern Drive, Delaware, Ohio.  Below are examples of such conversations:

Text conversation, in part, on June 12, 2017, about Viagra, which OWINGS agrees to supply to DELCOL:

OWINGS:  1.37 pounds  is American dollars.... 87 pounds times 1.37 is whatvthe viagra cost w shipping nLol you do the math..

DELCOL:  Ok

20

OWINGS: 119.19... shipping is 10$$ nI'll ask [a co-worker] at work tomorrow on what his 50mg pills are going for ...... but ill get a hold of you tomorrow to throw you one..

Text conversations, in part, between July 8, 2017 and July 9, 2017, about, "pink things in 20s", believed by your affiant through training and experience to be Oxycodone, which is supplied to OWINGS by DELCOL:

DELCOL: U just got lucky I saw my buddy last night. And he has those pink things in 20s

OWINGS: Bought time i get lucky in life lmao

DELCOL: I found out if u take a whole 20 u get sick and a headache

OWINGS: Fuck all that mess !!!!

DELCOL: Yeah not a good idea at all. Stick with 10

OWINGS: I think so !!!

DELCOL: Yep 10mg is enough, trust me. I tried it out

Text conversation, in part, on July 14, 2017, about "10s", believed by your affiant through training and experience to be Oxycodone, which is supplied by OWINGS to DELCOL:

OWINGS: You working today ??

DELCOL: Yep

OWINGS: If your around my work pull in the back to door 4 ill come out and give you those 10's you like b4 i eat them all ..lol

DELCOL: K. Walk out

Text conversation, in part, on July 17, 2017, about, "20's" and "bacwater", believed by your affiant through training and experience to be Oxycodone and bacteriostatic water used to allow for repeated withdraws from vials of injectable drugs:

DELCOL: U get those 20s

OWINGS: Negative

DELCOL: Not very reliable. Do u know where to get the water for the growth, the bacwater

OWINGS: Not 100% bc ive never delt w it but i can see what i can do

Text conversations, in part, on September 8, 2017 and September 9, 2017, wherein OWINGS directed DELCOL where within OWINGS residence, located at 662 Fern Drive, Delaware, Ohio, DELCOL could find bottles of injectable growth hormone, needles and syringes, and wherein DELCOL told OWINGS he would try to get some "30's" (believed by your Affiant to be Percocet):

> DELCOL: [racial epithet]. Need that shit. I will just get it the morning

> OWINGS: That's fine

> DELCOL: Where u gonna leave the stuff, hopefully not out on the counter!!! Need pins too the 30 and some 25. If he has the 30's I will bring them back to your house and drop a few off

> OWINGS: Sliding door is unlocked on kitchen table in the crock pot everything's in the bag

> OWINGS: Yey or ney

> DELCOL: ? What

> OWINGS: Did he have any P

> DELCOL: No he didn't have them yet, and I am headed to Portsmouth to camp. He will have them later tonight and save u some

This conversation is significant because it occurred at or about the same time DELCOL texted with GLASSBURN about getting money from GLASSBURN to put in an order for what is presumed to be HGH or another type of steroid, and then to drop off to GLASSBURN what was ordered after picking it up from a third party. At this same time, DELCOL also asked GLASSBURN if he had any footballs and GLASSBURN said he did not. As noted earlier in this affidavit where a portion of this text conversation was quoted in part, "footballs" is the street slang term for Xanax and the 30's, as stated above are Oxycodone. This is not the only example found in text records obtained in this investigation of simultaneous text exchanges between DELCOL and GLASSBURN, and DELCOL and OWINGS where DELCOL is a middleman between the two for drug trafficking transactions.

The following text exchange on September 12, 2017, shows OWINGS coordinating a pick up of narcotics from DELCOL at his residence at 201 Aaron Ct., Delaware, Ohio when DELCOL is without a car to drive the drugs to OWINGS'S residence:

> OWINGS: I'll come your way [racial epithet]

> DELCOL: Hurry I don't know when she will be back. I have 2 30s for u. Can u bring the hg so if she gets home we can say u are dropping it off

> OWINGS: Ya. Ok put them in my pocket

OWINGS: How long before u get here

Analysis of phone records shows that between October 30, 2017 and February 20, 2018 there were 365 contacts between DELCOL and OWINGS. Two hundred of those contacts were text messages and 165 of them were phone calls.

On February 9, 2018, DCDTF detectives collected the curbside trash set out from OWINGS'S residence located at 662 Fern Drive, Delaware and found mail and other documents addressed to Benjamin OWINGS, and an empty plastic bag that had contained a THC edible for which the packaging indicated there was 70 milligrams of THC crunch. A THC edible package was also found in the trash on February 23, 2018.

Surveillance and text messages show DELCOL going to ATMs just before or just after visiting 97 Rheem Street, Delaware, Ohio and 662 Fern Drive, Delaware, Ohio. In text messages DELCOL referenced needing to stop at an ATM to get cash for payment for drugs. A review of DELCOL'S bank records from February 2012 through October 27, 2017, shows there were 119 cash withdraws within that time. There were no cash deposits until January 2015, and since that time there have been fifty-five. The address associated with the account, which is in DELCOL'S name, is 201 Aaron Court, Delaware, OH. Discarded letters from DELCOL'S bank, addressed to him at 201 Aaron Ct., Delaware, Ohio, have been found in the trash at 201 Aaron Court, Delaware, Ohio.

## DELCOL'S SUPPORT OF CRIMINAL ACTIVITY

Witness Tampering—Mount Gilead Traffic Stop of GLASSBURN

On Saturday August 5, 2017, at approximately 4:34am, Mt. Gilead Police officers encountered GLASSBURN asleep at the wheel in his dark green 2002 Nissan Pathfinder, bearing Ohio license plate GSP-8796. While speaking with GLASSBURN, who claimed to be just tired, officers observed a cardboard box and a camouflage bag in the back seat with a drug pipe in it. Officers conducted a search and located 13.93 grams of a substance that tested positive as cocaine and three items totaling 7.42 grams of substances that tested positive as cocaine base. The Ohio Bureau of Criminal Investigation Laboratory tested all substances on January 17, 2018. GLASSBURN gave both a verbal and a written statement that he had found the drugs in one of his children's rooms at his residence in Delaware and had removed them. GLASSBURN told the officer he called an OSP Trooper friend of his, Jason DELCOL, whom he had asked for advice on what to do with the drugs. Another officer who responded to the scene of the traffic stop, a Morrow County Sheriff's Deputy, had GLASSBURN, using CP1, call DELCOL on CP4 (the Deputy took note of the number GLASSBURN dialed) to verify his story. The Deputy spoke with DELCOL who verified GLASSBURN had children who were problems and also said he did not know GLASSBURN to be involved with drugs. DELCOL engaged in this misleading conduct toward the officer with the intent to hinder, delay, or prevent the communication to a law enforcement officer of the United States of information relating to the commission of a Federal offense. Officers released GLASSBURN. The evidence was collected. On August 5, 2017, at approximately 5:09am, PERSON A, using CP9, sent a text message to GLASSBURN which said, "On 42 heading to you be there shortly Jason just text and said he spoke with you"

On Wednesday August 9, 2017, at approximately 7:25am, as part of a follow-up investigation, a Mt. Gilead officer made contact with DELCOL, on CP4, to further discuss the GLASSBURN traffic stop. In the recorded call, DELCOL identified himself as Trooper Jason DELCOL and explained his relationship with GLASSBURN by saying they went to high school together. DELCOL confirmed again that GLASSBURN had contacted him about finding some drugs/paraphernalia. DELCOL said he told GLASSBURN his options were to throw it away or take it to the Sheriff's Office and have it destroyed. DELCOL told the officer he could not recall much personal information about GLASSBURN'S children, saying he and GLASSBURN were not that close. DELCOL then went on to say he did not think GLASSBURN had been in much trouble. He said he knew GLASSBURN to have Hepatitis C, which has caused his liver to shut down, and as a result GLASSBURN is dying. DELCOL said he and GLASSBURN do not talk that often. Again, DELCOL engaged in this misleading conduct toward the officer with the intent to hinder, delay, or prevent the communication to a law enforcement officer of the United States of information relating to the commission of a Federal offense. Approximately one hour after speaking with the Mt. Gilead officer, according to a Pen Register on CP4, DELCOL initiated contact with GLASSBURN. A total of 17 contacts (in a previous affidavit, this was erroneously reported as 17 text messages) between DELCOL and GLASSBURN, starting at 8:26am and ending at 6:44 pm, occurred on August 9, 2017. Between 6:03pm and 6:44pm, there were six text messages. The content of the above referenced August 9, 2017 text messages were not included in information provided by VZW in response to the October 2, 2017 search warrant for information stored by VZW. However, text content was provided for an August 8, 2017 text message PERSON A forwarded to GLASSBURN from DELCOL wherein DELCOL texted PERSON A saying "As soon as he can call me he needs too, have mount Gilead pd calling me." This was one day before DELCOL returned the call to the Mt. Gilead detective following up on GLASSBURN'S traffic stop.

As is discussed elsewhere in this affidavit, GLASSBURN was arrested on an outstanding warrant on January 31, 2018. After being advised of his Miranda rights, GLASSBURN waived his rights and spoke to investigators. Contrary to what both GLASSBURN and DELCOL told the Mt. Gilead officer in August 2017, GLASSBURN denied that his children had drug problems.

Assault Charges Against GLASSBURN

DELCOL has also intervened in criminal court proceedings on behalf of GLASSBURN. GLASSBURN was charged with assault in September 2017, and DELCOL has since visited GLASSBURN'S probation officer at the Delaware Municipal Courthouse, in uniform, on two occasions to discuss the terms of GLASSBURN'S probation. On the first occasion, on November 14, 2017, PERSON A arrived at the courthouse to post GLASSBURN'S bond. DELCOL also arrived at the courthouse, in uniform, accompanying PERSON A to meet with the probation officer. DELCOL was present to pay the fees associated with the GPS ankle-monitoring device GLASSBURN was ordered to wear as a condition of his release. DELCOL used his personal credit card to pay the required $130.00 deposit for the ankle device.

A review of the pen register data for DELCOL'S phone, CP4, shows that from November 13, 2017 through approximately 11:00am on November 14, 2017, there was one phone call with GLASSBURN and two text messages and six phone calls with PERSON A on CP9.

On October 16, 2017, DELCOL contacted a prosecutor in GLASSBURN'S assault case. DELCOL told the prosecutor the behavior described by the victim was uncharacteristic for GLASSBURN and the charges should never have been filed against GLASSBURN. DELCOL told the prosecutor that while he was not present at the incident, GLASSBURN only palmed the victim about the face. DELCOL also told the prosecutor he had recommended to GLASSBURN that he fire the attorney who had initially represented him and to hire an attorney who DELCOL said would win the case against the prosecutor.

As mentioned above, on February 21, 2018, DCDTF detectives collected the curbside trash set out from 201 Aaron Court and found, among other items, a packet of Delaware Municipal court documents for Nicholas GLASSBURN.

Arrest of OWINGS

DELCOL has also intervened in official law enforcement business on behalf of his other drug supplier and customer, Benjamin OWINGS. On November 23, 2017, the Delaware City Police Department was called to 662 Fern Drive, the residence of OWINGS, as the result of a woman who appeared at the window of a police cruiser with signs of physical abuse, claiming to have been beaten and held against her will by OWINGS. During this incident, DELCOL, in uniform showed up and advised that he was a friend of OWINGS and he could assist the police department with getting OWINGS to come out and speak with officers. OWINGS eventually came out of his residence and was taken into custody and charged by indictment in the Delaware County Court of Common Pleas with felony Abduction, misdemeanor Assault, and misdemeanor Aggravated Menacing.

Arrest of GLASSBURN

On January 31, 2018, GLASSBURN was arrested on an outstanding warrant for failure to appear in a Delaware Municipal Court proceeding related to the assault charge. For at least two weeks leading up to this arrest, GLASSBURN was not seen by law enforcement surveillance and he had stopped using the three cellular phone numbers known to law enforcement to have been used by him. Your affiant knows based on training and experience that people who attempt to evade law enforcement when they know there is a warrant for their arrest will often stay at unusual locations and obtain a new cellular phone number.

Upon his arrest, GLASSBURN revealed a new cellular number to law enforcement officers, 740-417-5843, referred to as CP10 in this affidavit. At or around this same time, it was determined that PERSON A, through two separate contacts with law enforcement resulting from a traffic stop and an outstanding warrant, had also obtained a new cell number, 740-417-5414, referred to as CP11 in this affidavit. PERSON A provided an additional contact number to law enforcement officials – 740-994-1660, referred to as CP12 in this affidavit – which she said belonged to a relative of GLASSBURN.

A review of DELCOL'S phone records (CP4) showed contact with CP11 and CP12 at the time of and following the arrest of GLASSBURN. This phone activity is consistent with the phone activity and actions surrounding GLASSBURN'S Mt. Gilead traffic stop and DELCOL'S intervention in GLASSBURN'S assault case. There were 42 contacts with CP11, PERSON A'S phone, between the date of GLASSBURN'S arrest on January 31, 2018, and February 1, 2018, when GLASSBURN bonded out of jail. This contact between PERSON A and DELCOL is

consistent with communication between the two when Mt. Gilead Police encountered GLASSBURN in August 2017 and when GLASSBURN was incarcerated in November 2017 for failing to comply with the terms of his release on the assault case. On February 3, 2018, there were 6 contacts between DELCOL and CP12, GLASSBURN'S relative's phone. Your affiant knows from training and experience that using another person's phone is consistent with a person's actions who is attempting to avoid detection by law enforcement. This is confirmed by the fact that records do not show any calls between CP4 and CP10, the new phone obtained by GLASSBURN, during this time period. Also, the continued contact by DELCOL with GLASSBURN, even after his criminal legal issues, is indicative of a person who continues to sell to and seek to buy drugs from someone with whom they feel comfortable and who they feel they can trust. From your affiant's experience, law enforcement officers who traffic in narcotics attempt to minimize the number of people with knowledge of their illegal activity to minimize the risk of being caught.

On February 9, 2018, a federal search warrant was executed on VZW for text message content for DELCOL'S cell phone, CP4, for all texts being stored at VZW beginning on or about January 30, 2018. The text messages showed PERSON A communicating with DELCOL. In one text on February 3, 2018, PERSON A told DELCOL, in part, "Nick is going to call you on this line in a minute." In that same text, PERSON A said they were using a text application. Your affiant knows from training and experience, people use text applications over the internet when they cannot afford to or have no data left to send and receive texts through the cell service provider, or when they are attempting to hide text messages. In the text messages, PERSON A is trying to raise money. The text messages discuss how PERSON A will take $1,100 for a car because they need to raise bond money for GLASSBURN by 10am on February 1, 2018. In trying to assist getting GLASSBURN out of jail, DELCOL agrees to contact a relative of his to see if they are interested in purchasing a car from GLASSBURN. Your affiant knows from training and experience, law enforcement officers who are conspiring to commit drug trafficking and other crimes have a vested interest in making sure their co-conspirators do not go to jail or do not stay in jail. When a co-conspirator is incarcerated, it decreases their drug supply and profitability, and increases the risk the co-conspirator will cooperate with law enforcement.

Ultimately, DELCOL'S relative did not purchase the car, and in a text message between DELCOL and 740-217-2053 on February 8, 2018, DELCOL says, "sorry to hear that man, i have tried to get him to buy that car but they don't want to work on it. how can i help u out?" While the telephone number associated with this and other similar texts is not known to investigators, it appears from the context that DELCOL is texting with GLASSBURN. In text exchanges with this number on February 1, 2018, DELCOL can be seen arranging to visit GLASSBURN at either the "house or the apartment", which are known to investigators to be the house at 97 Rheem Street or the apartment at 22 Estelle Drive. Investigation has shown that DELCOL visits GLASSBURN only for the purpose of conducting activities related to drug trafficking. It is known to investigators that GLASSBURN was released from jail on bond on February 1, 2018.

Based on training and experience it is known to your affiant that people involved in drug trafficking, including law enforcement officers, show indicators of their illegal activity through use of cell phones that can be seen through the analysis of toll data associated with target cell phones, as well as pen register data collected on those phones, and text content. Data collected associated with the target phones in this investigation, as well as information provided by

independent, reliable informants and observations made by investigators during surveillance indicate there is probable cause to believe DELCOL, GLASSBURN, and others listed herein are using the referenced cellular telephones at key times surrounding drug trafficking activity and misuse of an official position, and that the content of the information stored on the devices for which search warrants are sought, may contain evidence of illegal drug transactions, evidence of corruption of public officials and may identify others involved in particular criminal acts. Also, the same data collected associated with the target phones in this investigation, as well as information provided by independent, reliable informants, observations made by investigators during surveillance and through the review and analysis of records obtained in this investigation pursuant to Grand Jury subpoenas and federal search warrants, indicate there is probable cause to believe DELCOL, GLASSBURN, CARVALHO, CRAWFORD, COVRETT, and OWINGS have violated, individually or collectively as designated in the Arrest Warrants sought by Complaint, the crimes listed above in the "Purpose of the Affidavit" section.

## CONCLUSION

Based on the foregoing facts, your affiant believes there is probable cause to search the locations listed above in the "Purpose of the Affidavit" section for the crimes listed in that section. Based on the foregoing facts, your affiant further believes there is probable cause to arrest the individuals listed above in the "Purpose of the Affidavit" section for the crimes listed in that section.

## APPLICATION FOR SEALING ORDER

Release of the information contained in this affidavit and related papers is likely to hinder and impede this continuing investigation. Accordingly, it is respectfully requested that this Affidavit, the Search Warrants, Applications for Search Warrants, Arrest Warrants, and the Complaints (except for such copies as are necessary for their implementation) be sealed until further Order of the Court so as to not jeopardize this ongoing criminal investigation.

I respectfully request that the warrants be issued and sealed.

Respectfully submitted,

Tisha M. Hartsough
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 26TH day of February, 2018 at Columbus, Ohio.

ELIZABETH PRESTON DEAVERS
U.S. MAGISTRATE JUDGE

27